LOUIS M. SIMPSON et al., Respondents, *v.* THE JERSEY CITY CONTRACTING COMPANY, Appellant.

ATTACHMENT — OF NON-RESIDENT'S INTEREST IN STOCK OF FOREIGN CORPORATION PLEDGED TO A RESIDENT CORPORATION.  Where certificates of stock of a foreign corporation belonging to a non-resident are in possession of a resident of this state as security for a debt, the interest of the owner and pledgor therein is a property right within this state and may be levied upon under a warrant of attachment against him, made by service of a notice on the pledgee in the manner prescribed by subdivision 3 of section 649 of the Code of Civil Procedure.

*Simpson* v. *Jersey City Contracting Co.*, 47 App. Div. 17, affirmed.

(Argued November 12, 1900; decided December 11, 1900.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 11, 1900, reversing an order of Special Term vacating a levy of attachment made upon certain certificates representing shares of stock of the New Jersey and Pennsylvania Telephone Company.

The question certified and the facts, so far as material, are stated in the opinion.

*Woolsey Carmalt* and *Albert B. Kerr* for appellant.   Stock of a foreign corporation is not property within the state, subject to levy of attachment against a non-resident owner.

(*Plimpton* v. *Bigelow*, 93 N. Y. 592; *Christmas* v. *Biddle*, 13 Penn. St. 223; *Winslow* v. *Fletcher*, 53 Conn. 396; *Tweedy* v. *Bogart*, 56 Conn. 419; *Ireland* v. *G. M., etc., Co.*, 19 R. I. 180; *Banking Co.* v. *Smith*, 20 S. W. Rep. 690; *Smith* v. *Downey*, 34 N. E. Rep. 823; *Young* v. *Iron Co.*, 2 S. W. Rep. 202; *Pinney* v. *Nevills*, 86 Fed. Rep. 97.) There is no statute in this state authorizing a levy in any manner upon shares of stock of a foreign corporation. (*Penoyar* v. *Kelsey*, 150 N. Y. 77; *Plimpton* v. *Bigelow*, 93 N. Y. 602.) The ownership of the shares of the New Jersey and Pennsylvania Telephone Company was at all times in defendant. (*Smith* v. *Am. Coal Co.*, 7 Lans. 317; Jones on Pledges, §§ 1, 4; *Farwell* v. *Bank*, 90 N. Y. 483; *Lawrence* v. *Maxwell*, 53 N. Y. 19; *Warner* v. *F. Nat. Bank*, 115 N. Y. 251.)

*Alfred B. Cruikshank* for respondents. The theory of the appeal is incorrect. The levy was not an attempt to reach the interest of defendant in a New Jersey corporation. (Code Civ. Pro. § 648.) The right of the defendant to receive and recover the surplus proceeds of this stock was attachable. (*Warner* v. *F. Nat. Bank*, 115 N. Y. 251.) The property levied upon was within the county and state of New York at the time of the levy; and was, therefore, subject to the warrant of attachment. (*Warner* v. *F. Nat. Bank*, 115 N. Y. 256; *Smith* v. *Am. Coal Co.*, 7 Lans. 317.)

GRAY, J. The Appellate Division of the Supreme Court, in the first department, has certified the following question of law to this court: "Whether, where the certificates of stock of a foreign corporation belonging to a non-resident of the state are in possession of a resident of this state, as pledgee, the interest of the owner and pledgor can be levied upon under a warrant of attachment against such owner, made by service of a notice on the pledgee in the manner prescribed by subdivision 3 of section 649 of the Code."

The circumstances out of which the question arose were

these : The plaintiffs, commencing an action against the
defendant, a foreign corporation, to recover for professional
services, procured a warrant of attachment to be issued and
the levy to be made upon its interest in certain shares of the
capital stock of the New Jersey and Pennsylvania Telephone
Company, a foreign corporation, which belonged to it and the
certificates for which it had delivered to the Produce Exchange
Trust Company of the city of New York, as security for the
payment of a note.   The levy was made pursuant to the pro-
visions of subdivision 3 of section 649 of the Code of Civil
Procedure and if the interest of the defendant constituted
property, which was the subject of attachment under our
laws, then there is no question but what the levy was properly
made and that the property was impounded.   Section 649
provides, in its first and second subdivisions, for a levy upon
real property and upon personal property " capable of manual
delivery, including a bond, promissory note, or other instru-
ment for the payment of money " and, then, in its third sub-
division, it provides for a levy " *upon other personal property*,
by leaving a certified copy of the warrant, and a notice show-
ing the property attached, with the person holding the same ;
*or, if it consists of a demand, other than as specified in the
last subdivision*, with the person against whom it exists," etc.

The argument of the appellant is, in effect, that this was an
attempt to levy an attachment on its shares of stock and that
the legal principles, which underlie the ownership of capital
stock, preclude the idea that jurisdiction could be obtained in
that manner.   It is insisted that " the stock of a foreign cor-
poration is not property within the state subject to levy of
attachment against a non-resident owner."   Thus generally
stated, and within such a state of facts as is shown in the case
cited of *Plimpton* v. *Bigelow*, (93 N. Y. 592), the proposition
may be true.   In that case, the plaintiffs were non-residents of
the state; but they brought an action therein against the
defendant, who was, also, a non-resident.   It was attempted to
attach shares of stock of a foreign corporation, which were
owned by the defendant and the certificates of which were in

his possession at his domicile, by causing the sheriff to make a levy upon an officer of the corporation in the city of New York, under the provisions of section 649 of the Code. It was held that the section did not apply, for the reason that the fundamental condition of an attachment proceeding did not exist, viz.: that the *res* must be within the jurisdiction of the court for an effectual seizure. The right which the shareholder has by reason of his ownership of corporate shares is not a debt, or duty, of the corporation, existing in a foreign jurisdiction, wherever its officers may be found engaged in the prosecution of the corporate business. The decision was, manifestly, correct. A corporation is incapable of leaving the place of its domicile; whatever may be its offices and agencies in other states. As it was said: it "is not here because its agents are here." That case differs materially; but it was pointed out in the opinion that intangible rights, or interests, or *choses in action*, are made by the statute susceptible of seizure by attachment, when they can be said to be constructively present within the jurisdiction. It was said that where a debtor "is out of the jurisdiction and the debt or duty owing to him, or the right he possesses, exists against some person within the jurisdiction, attachment laws fasten upon that circumstance, and by notice to the debtor or person owing the duty, or representing the right, impound the debt, duty or right, to answer the obligation which the attachment proceeding is instituted to enforce. In the case supposed, the debt, duty or right, for the purpose of attachment proceedings, is deemed to have its situs or locality in the jurisdiction."

This foreign defendant, in order to secure the payment of its indebtedness to the trust company in New York, pledged with it the shares of stock in the foreign corporation of which it was the owner and, as we must assume, by an assignment of the certificates representing the same in some form of transfer, which conferred apparent title and which would enable the assignee, or pledgee, to enforce the security by its sale and transfer. Thus, the defendant's interest in the stock was held by a title and with a right which authorized the trust com-

pany to possess it until the indebtedness was paid, and, in the event of non-payment, to sell it in satisfaction of its claim. The relation of the parties was that of pledgor and pledgee and the special property which the latter had in the pledge entitled it to its possession against all the world.  It stood accountable to the former for its acts with respect to the security.  It could be compelled to pay over any surplus realized upon a sale, or to return any of the stock not sold for payment of the debt. (*Wheeler* v. *Newbould,* 16 N. Y. 392; *Warner* v. *Fourth National Bank,* 115 ib. 251.)  It is true that the corporate property represented by the shares of stock was not within this jurisdiction; but how is that a controlling consideration and can it, reasonably, be said that this defendant had· no property here, whether we regard it as in the transferred certificates of stock, or as in the claim or demand which it had against the trust company?  What is the reasonable view and, therefore, the one which the law should take?  Jurisdiction, certainly, is founded upon the presence of the thing, in respect to which it is exercised.  The action is *in rem* and the question seeks the place *rei sitæ.*  That the defendant had conditionally parted with its interest in the stock to the trust company is true.  That it had transferred to it the possession of the certificates evidencing that interest — its muniments of title — with the right to transfer the same, upon a sale in satisfaction of the debt secured, is true.  That the defendant's interest in the pledge was of a residuary nature and constituted a claim upon the pledgee is true.  The defendant had, to the extent of its ability, transferred to the trust company, as security for the payment of its indebtedness, whatever was its interest in the foreign corporation as evidenced by the delivery of the certificates of stock.  Did it not, therefore, clearly, have property rights, or interests, within this state, which could be impounded by our courts to abide the result of the litigation over the plaintiff's claim ?  I think so.  The distinctions sought to be drawn are, largely, artificial.  The truth is that it did have property here, in the common acceptation of the term, as well as in the eye of the law.  Certificates of

stock are treated by business men as property for all practical purposes. They are sold in the market and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand and they are the subject of larceny. (See *In re Whiting,* 150 N. Y. 27.)

I think that the case of *Warner* v. *Fourth National Bank,* (115 N. Y. 251), is much in point. In that case a New York bank, having a claim against a Pennsylvania bank, attached certain promissory notes and bills of exchange, which the latter had pledged with another New York bank to secure a loan of money. The case turned upon the effectiveness of the levy made under the warrant; that is to say, whether the sheriff should have taken the property into his actual custody, or whether he had sufficiently acted under the warrant in serving a certified copy of it and a notice showing the property attached, with a demand for a certificate, etc. It was held that the pledgee was entitled to the possession of the property as against the sheriff and his form of levy was upheld; and it was observed that " what was the subject of the attachment was the right of the Penn bank, (the debtor), to compel its pledgee to account to it as to the pledged paper and to receive the surplus of the proceeds of collection, after satisfying the pledgee's claim for advances. That right is a chose in action, and, in the nature of things, is intangible. It is the subject of attachment as a demand against the person, within the spirit of the language of the Code." It was, further, observed, that " while the debt remains undischarged the pledge belongs to the pledgee and the title is subject to the pledgee's lien and right of possession ; but the pledgor's residuary interest in the pledge constitutes a claim, or demand, upon the pledgee, which is property and, hence, may become the subject of attachment."

The *Bronson Case,* (150 N. Y. 1), is suggested as negativing the idea that an attachment could lie in this case. The question there considered related to the interest which a non-resident shareholder in a domestic corporation might be said to

have for the purposes of taxation under our Inheritance Tax Act. It was said that a share of capital stock represents an undivided interest in the whole of the corporate property and the certificates of stock evidence the number of shares owned by the stockholder; that the right of a stockholder to share in the corporate property is a chose in action, which follows the shareholder's person, and that the property represented has its legal situs either at the domicile of the corporation, or at that of the holder of the shares. It is difficult to see how that case, in defining the general understanding of the law with respect to the ownership of shares of stock in a corporation, can have any authoritative application to the present question. That question is not, whether the property of the corporation can be said to be within the state for jurisdictional purposes through attachment proceedings; but whether, the certificates of stock being here under a transfer by their owner to the trust company in pledge to secure an indebtedness of the former, there was not present property of the debtor which was capable of effectual seizure by the court's process.

But it is further argued, in support of the proposition that the court was without jurisdiction, that a judicial sale of the defendant's property or interests, here, would be ineffectual; because a transfer of the shares upon the corporate books could not be effectuated through any order of the court. The argument, again, rests upon *Plimpton* v. *Bigelow ;* where it was observed in the opinion that " it could scarcely be expected that the courts of another state would recognize a title to corporate stock in one of its own corporations, founded upon a sale under an attachment issued by our courts against a non-resident, when the only semblance of jurisdiction over the property was the service of notice in the attachment proceedings, upon an officer or agent of the corporation here." The facts of that case, as I have already intimated, make it inapplicable here. It is an incorrect idea that the managing agents of the corporation, or joint stock company, might have some discretionary authority to refuse a proposed transfer. Such a proposition is not sanctioned by the common law, and

could not stand the test of reason. The presumption is that, if the stock of the defendant was sold at a judicial sale to another, the right of the purchaser to a transfer would be recognized and his ownership of the stock be given effect upon the books of the corporation. The managing agents of a corporation may prescribe reasonable rules and formalities, regulating the transfer of shares ; but they could have no discretionary power to refuse to register a proposed transfer. (Morawetz on Corporations, secs. 164, 165 ; *Commercial Bank v. Kortright*, 22 Wend. 348.) We are not to assume, in the event of a judicial sale of the defendant's interest in this stock for the purpose of applying upon the plaintiffs' judgment any surplus remaining after satisfaction of the pledgee's demands, that it will be ineffectual to transfer to the purchaser a right to the ownership of the stock and to a transfer of the title upon the books of the corporation, as valid as though the trust company had sold it at a public sale and delivered the certificates in its possession to a purchaser. The presumption with respect to the effect of a judicial sale of the stock is quite the other way from that which is suggested. It is not that our courts could effectuate a transfer of the stock upon the books of the foreign corporation ; but that the corporation itself will recognize and give effect to the purchaser's title.

For the reasons which I have given, I think that the question certified to us should be answered in the affirmative and, therefore, that the order appealed from should be affirmed, with costs.

LANDON, J. (dissenting). The defendant is a corporation organized and doing business in the state of New Jersey, and having no place of business in this state. The summons was personally served upon it and it has appeared in the action. It deposited and pledged with the Produce Exchange Trust Company, a domestic corporation, certificates of 3,220 shares of stock in the New Jersey and Pennsylvania Telephone Company, a corporation organized and doing business in New Jersey, as collateral security for the payment of a loan by that

company to it.   The sheriff made the alleged levy under sub-
division 3 of section 649 of the Code, by serving a copy of the
warrant with the proper notice upon the Produce Exchange
Trust Company.

The Appellate Division has certified the following question :

Whether, where the certificates of stock of a foreign cor-
poration belonging to a non-resident of the state are in posses-
sion of a resident of this state as pledgee, the interest of the
owner and pledgor can be levied upon under a warrant of
attachment against such owner, made by service of a notice
on the pledgee in the manner prescribed by subdivision 3 of
section 649 of the Code.

The certificates of stock of a foreign corporation are capable
of manual delivery, and when the person to whom they have
been issued indorses upon them an assignment in blank pursuant
to the rules of the corporation and the laws of the country of
its domicile, they may be transferred by such delivery, and
then the property or rights of property of which they are the
evidence may be transferred.

If the record had shown that these certificates were thus
indorsed, then the question certified could be answered in the
affirmative upon the authority of *Warner* v. *Fourth National
Bank* (115 N. Y. 251).   That was the case of a levy upon
the pledgor's interest in certain promissory notes, pledged by
a non-resident to a resident pledgee as collateral to a loan.
The levy was not upon the notes themselves, and thus the
sheriff was not required to take possession of them, but upon
the pledgor's intangible right to redeem the notes, or to receive
from the pledgee the surplus in his hands after satisfying his
lien upon them, and thus the levy was properly made — in
the same manner as in the case before us — under subdivision
3 of section 649 of the Code, by leaving a certified copy of
the warrant, and a notice showing the property attached, with
the resident pledgee.   The non-resident's thing in action would
be against a resident and enforcible here, and thus within our
jurisdiction, and, therefore, the subject of levy under the attach-

ment. But the difficulty is, the record does not state that the pledgor's assignment is properly indorsed in blank upon the certificates; it may not be indorsed at all. We cannot assume something from nothing, affirmative acts without evidence of them; the pledgee may hold the pledgor's promise to assign. The pledgor has appeared in the action, but as it is a non-resident, without domicile, office or existence within the state, that fact adds nothing to the leviable quality of the subject-matter.

If the resident pledgee should sell the certificates and realize a surplus, the surplus would be within our jurisdiction. But the question certified does not present that situation. Nothing can be rightfully realized under this levy unless the sheriff can sell either the shares of capital stock, of which the certificates are the evidence, or such intangible rights respecting the same and proceeding therefrom as will ultimately result in compulsorily transferring the title to the stock itself to his vendee.

[It has been settled by abundant decisions in this and other jurisdictions that the certificates of shares in the capital stock of a foreign corporation are mere evidences of the owner's rights in such stock, and are not the stock itself, and although the certificates may be within this state, the stock itself is not, but is held and owned by the corporation in the foreign state, and, therefore, is incapable of seizure or levy under attachment here, and that although the right to shares thereof may be held by the owner wherever he may make the right available, still that right finds its value and quality as property in the right to require the corporation at its domicile to discharge the obligations which it has assumed and for which it holds the capital stock and assets. The sheriff can levy upon nothing which he cannot actually seize within his jurisdiction, or so constructively seize as to enable him by a sale thereof to give such title to his vendee as the debtor himself held; that is, such as will, in the case before us, give to the vendee the same right of recourse to the foreign corporation as the debtor had.] (*Plimpton* v. *Bigelow*, 93 N. Y. 592; *Christ-*

*mas* v. *Biddle*, 13 Penn. St. 223 ; *Winslow* v. *Fletcher*, 53 Conn. 396 ; *Tweedy* v. *Bogart*, 56 Conn. 419 ; *Ireland* v. *Globe Milling, etc., Co.*, 19 R. I. 180 ; *Armour Bros. Banking Co.* v. *Smith*, 20 S. W. Rep. 690 ; *Smith* v. *Downey*, 34 N. E. Rep. [Ind.] 823 ; *Young* v. *S. T. Iron Co.*, 2 S. W. Rep. [Tenn.] 202 ; *Pinney* v. *Nevills*, 86 Fed. Rep. 97 ; Cook on Stock, Stockholders & Corporation Law, paragraph 485.  See *Matter of Bronson*, 150 N. Y. 1 ; *Matter of Whiting*, ib. 27.)

It is true that our law, notably section 4 of the Statutory Construction Law, in effect declares stock certificates property, and so they are wherever we are able to enforce our law, namely, within this state.  As to the stock and interests therein of domestic corporations they cannot exist, except under and subject to our laws, and, therefore, our jurisdiction is complete over them.

But we cannot enforce our law in a foreign state as to the stock of its corporations, and the interests therein of its holders, and we cannot, therefore, give title to it otherwise than by our jurisdiction over its owners.  An attachment is directed against property and not against persons, and whatever control the court may exercise over all persons, resident or non-resident, who are brought within its jurisdiction, such control is not attachment process against vendible property, or interests in or through it.

It is suggested in the opinion below that the sheriff can make the sale, and the vendee can take his purchase for what it is worth.  The sheriff did not attach the paper certificates, for he did not take them into his actual custody; he, therefore, cannot sell them as paper or manuscripts.  Whatever he sells is intangible.  He can make and deliver a certificate of sale (Code, section 647), but his vendee, or at least the ultimate vendee, must repair to New Jersey to recover what he supposes he has bought.  Our courts cannot give him possession. The New Jersey court could give full faith and credit to our judicial proceedings by adjudging that our sheriff levied upon nothing outside of his jurisdiction, and, therefore, his certificate of sale does not give the right to possession of anything

in New Jersey.   We should not expose purchasers at our judicial sales to such hazards.

The question certified should be answered in the negative, and the order appealed from reversed, with costs.

PARKER, Ch. J., HAIGHT, CULLEN and WERNER, JJ., concur, with GRAY, J., for affirmance; O'BRIEN, J., concurs with LANDON, J., for reversal.

Order affirmed.