CYRIL F. DOS PASSOS, Respondent, *v.* "ADAM" D. MORTON, the Name "ADAM" Being Fictitious, Defendant's First Name Being Unknown, the Defendant Being President of ·RYAN CONSOLIDATED PETROLEUM CORPORATION, Appellant.

First Department, November 5, 1926.

Attachment — action against non-resident — plaintiff attached salary of non-resident due from foreign corporation having office in this State — jurisdiction over non-resident cannot be obtained by attaching indebtedness due non-resident from foreign corporation — immaterial whether or not foreign corporation is doing business here — giving uncertified check in this State does not amount to setting apart of fund — under Negotiable Instruments Law, § 325, check does not operate as equitable assignment — attachment cannot be made of check until after it. has come into possession of defendant — warrant of attachment and levy thereunder vacated.

A warrant of attachment and the levy made thereunder, in an action against a non-resident, made on salary due from a foreign corporation, having an office in this State, to the non-resident defendant, will be vacated and set aside, for whether or not the foreign corporation is doing business here the rule in this State is that jurisdiction over a non-resident cannot be obtained and an attachment will not be valid where a levy is made on an indebtedness due a non-resident defendant from a foreign corporation in New York.

The levy cannot be sustained upon the ground that the mere giving of an uncertified check amounted to a setting apart of a fund so as to create a *res* within this jurisdiction, for, under section 325 of the Negotiable Instruments Law, a check does not operate an an equitable assignment of any part of a deposit, and a bank is not liable to the holder until it accepts or certifies the check.

A valid levy cannot be made on a check unless the instrument is physically taken into possession by the sheriff at a time after the check has come into possession of the defendant payee or after the latter has exercised ownership over it.

APPEAL by the defendant, "Adam" D. Morton, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of June, 1926, denying defendant's motion to vacate a warrant of attachment, and also from an order entered in said

clerk's office on the 23d day of June, 1926, denying defendant's motion to set aside and vacate the levy made pursuant to a warrant of attachment.

*Charles J. Lane* of counsel, for the appellant.

*Henry G. Wiley* of counsel [*Cyril F. Dos Passos* with him on the brief], for the respondent.

FINCH, J. The question presented for decision by this appeal is as to the validity of the attachment and levy thereunder. The claim of the plaintiff against the defendant Morton is based on two promissory notes made by the latter in Oklahoma and payable in that State. Concededly, Morton is a non-resident of this State. He is president of the Ryan Consolidated Petroleum Corporation, a non-resident corporation. The levy was made on the Ryan Consolidated Petroleum Corporation, which has an office in New York city. From month to month said corporation would mail from its New York office to the defendant Morton a check for $833.33 in monthly payment of his salary of $10,000 a year. It appears that at the time of the levy the Ryan Petroleum Corporation had mailed a check to Morton but, upon being advised that unless payment of the check was stopped it would be held accountable, the corporation stopped payment on the check. The said Ryan Petroleum Corporation alleges that its principal office is in Wilmington, Del., and that it transacts no business in the State of New York so as to subject it to service of process in the jurisdiction of New York courts. The plaintiff submits the annual report of said corporation, which is dated and sent out from 17 East Forty-second street, where the corporation maintains an office. The corporation also has bank accounts in several banks in New York and, as heretofore noted, sends the salary checks to its president in Oklahoma from this New York office. For the purposes of this appeal, however, it is immaterial whether the said corporation is held to be doing business here or not, since it is the rule of law in New York that jurisdiction over a non-resident cannot be obtained, and an attachment will not be valid, by seeking to make a levy on an indebtedness due the non-resident defendant from a foreign corporation in New York. In *Cohn* v. *Enterprise Distributing Corporation* (214 App. Div. 238) the court said: " So far as this court is concerned, this question has been settled by the decision in *Bridges* v. *Wade* (113 App. Div. 350). There, Mr. Justice CLARKE (now presiding justice), writing for a majority of the court, held that a plaintiff who brings action against a foreign defendant (not licensed nor doing business in this State) to recover the agreed price of goods sold in another State, is not entitled,

under a warrant of attachment, to levy upon an indebtedness due the defendant from a foreign corporation which has complied with our laws by filing its certificate and paying its taxes so as to entitle it to sue on its own contracts in our courts, and which, as a matter of fact, has its chief office and transacts much of its business in this State."

In the case at bar, as noted, the defendant to whom the salary was owing is a non-resident. It does not appear whether the attaching plaintiff is a resident of this State or not. It affirmatively appears that the debtor corporation is a foreign corporation, with its principal office at Wilmington, Del. The courts of New York, differing from the doctrine laid down in the Supreme Court of the United States, hold that if jurisdiction against a non-resident could be obtained by attaching a debt in each of the forty-eight States wherein the debtor corporation might be doing business, it would lead to hopeless confusion as to jurisdiction. (*Bridges* v. *Wade*, 113 App. Div. 350; *National Broadway Bank* v. *Sampson*, 179 N. Y. 213.)

Nor can the levy be sustained upon the ground urged, namely, that the mere giving of an uncertified check amounted to the setting apart of a fund so as to create a *res* within the jurisdiction. Under section 325 of the Negotiable Instruments Law, a check does not operate as an equitable assignment of any part of a deposit and the bank is not liable to the holder unless and until it accepts or certifies the check. It is a mere order for the payment of money and does not operate as an assignment. In *Glennan* v. *Rochester Trust & S. D. Co.* (209 N. Y. 12) the court, by CULLEN, Ch. J., said: "For the appellant it is argued, first, that a check, of itself, is a mere order for the payment of money, not operating as an assignment of any part of the fund, the authority of the drawee or the banker to pay which may be revoked or countermanded by the drawer. This is the rule of law prevailing in England and in this country * * *. The rule stated is unquestionably the law of this State as well as the law of the Federal courts."

There was thus no fund created by the drawing of the check upon which the levy could attach. In so far as the check itself was concerned, no levy could attach unless the instrument was physically taken into possession by the sheriff at a time after the check had come into the possession of the defendant payee or the latter had exercised ownership over it. (*Anthony* v. *Wood*, 96 N. Y. 180; *Erskine* v. *Nemours Trading Corporation*, 239 id. 32.) In the case last cited an attachment was levied upon a check or draft to the order of the defendant, a foreign corporation, while such paper was in the county of New York but before it had been

delivered to the defendant. It was held that such levy conferred no jurisdiction, the court, by Judge Pound, saying:

" This paper was found within the county of New York in the possession of the Commercial Bank of Spanish America which received it from plaintiff, but it does not appear that it was ever in the actual or constructive possession of any authorized agent of defendant, or that defendant had asserted or exercised any dominion or claim of ownership over it. If it had, when attached, become the property of defendant, it would have been unquestionably an instrument for the payment of money upon which the holder might maintain an action (Negotiable Instruments Law [Cons. Laws, ch. 38], § 214), and the levy of the attachment would be deemed ' a seizure and attachment of the debt represented thereby.' (Civil Practice Act, § 916.)

" The material question is, however, whether defendant had become the holder of the instrument when the attachment was levied. It does not appear that defendant had accepted delivery thereof in the State of New York. If tender of delivery had been made to some representative of defendant in the State of New York, he might properly have insisted that delivery be made at the office of the corporation. He would not be bound, even if authorized, to create attachable property in the State of New York. The debtor could not insist upon acceptance. It was or was not a cause of action in the county of New York as defendant might elect, but no election had been made.

" That by some act other than that of defendant the paper has been brought into the State of New York is not enough to make it or the debt represented thereby an attachable cause of action in this State. It is for purposes of attachment inchoate until delivery has been made to defendant or defendant has otherwise asserted dominion over it. Neither the drawer of the instrument nor the attaching creditor nor the bank may impress it with the character of being defendant's property. It follows that defendant was not the holder of the instrument when the attachment was levied and that it was not attachable as property of defendant."

It follows that the orders appealed from should be reversed, with ten dollars costs and disbursements, and the motions to set aside the attachment and the levy thereunder granted, with ten dollars costs.

Clarke, P. J., Dowling, McAvoy and Martin, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and motions granted.